UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Floor and Decor Outlets of America, Inc., | ) | C/A No. |
| | ) | |
| *Plaintiff*, | ) | **COMPLAINT** |
| | ) | **(Non-Jury)** |
| Versus | ) | |
| | ) | |
| 2233 Highway 17 North, LLC, | ) | |
| | ) | |
| *Defendant*. | ) | |

TO:    THE DEFENDANT ABOVE NAMED AND ITS COUNSEL:

The Plaintiff, Floor and Decor Outlets of America, Inc., by and through its undersigned

attorneys, brings this action against the Defendant, 2233 Highway 17 North, LLC, alleging and

stating as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    The Plaintiff, Floor and Decor Outlets of America, Inc. (hereinafter, "F&D" or

"Tenant"), is a corporation organized and existing under the laws of the state of Delaware, with

its principal place of business in the state of Georgia.

2.    The Defendant, 2233 Highway 17 North, LLC (hereinafter, "Landlord") is a

limited liability company organized and existing under the laws of the state of South Carolina.

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and

Defendant and the amount in controversy exceeds the sum or value of $75,000.

4.    Venue is proper in the District of South Carolina, Charleston Division, pursuant to

28 U.S.C. § 1391(b)(2) because the real property that is the subject of this action is situated in

Mount Pleasant, South Carolina, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, as well.

## BACKGROUND

5.    This action arises from a ground lease dispute between F&D and Landlord wherein F&D seeks a declaratory judgment regarding certain rights and obligations of the parties under their lease agreement, as well as damages for Landlord's material breaches of contract.

6.    Landlord falsely claims that F&D has breached the lease, is in default, and has not paid rent that is due, when in fact the Landlord has breached the lease and is in default, rent has not commenced, and Landlord owes F&D significant delay damages per the terms of the lease.

7.    The parties entered into a ground lease agreement effective February 19, 2024, a true and correct copy of which is attached to this Complaint as Exhibit 1 (hereinafter referred to as the "Lease").

8.    The terms capitalized herein have the meanings ascribed to them in the Lease, unless otherwise defined in this Complaint.

9.    The Lease governs the parties' respective rights and obligations concerning the development and occupancy of the commercial real property located in Mount Pleasant, South Carolina.

10.    Under the terms of the Lease, F&D has leased approximately 5.27 acres of land from Landlord for an initial term of twenty (20) years commencing on the Rent Commencement Date, with four (4) ten-year extension options that could extend the lease for up to sixty (60) years in total.

11.    F&D has begun constructing, and intends to operate, a retail store of approximately 80,000 square feet on the Premises offering for sale hard surface flooring

products, along with related design services and home improvement items. The store represents a significant investment by F&D in the Mount Pleasant community.

12.     The Lease contains clear obligations for both parties pertaining to the development and operation of F&D's retail store on the premises. Of particular importance to this action are the provisions defining when the Commencement Date and Rent Commencement Date would occur, as these dates trigger certain obligations under the lease, including the payment of rent.

**I.      The Lease:**

**A.      Lease Provisions Applicable to Commencement and Rent Commencement:**

13.     The Lease establishes the Commencement Date as "one (1) Business day following _the later of_ (i) the date on which Landlord has delivered possession of the Premises to Tenant **with the Landlord Work completed** and the other conditions set forth on Exhibit B attached to this Lease (the "Delivery Condition") satisfied; or (ii) the earlier to occur of (A) Permitting Expiration Date, or (B) the date on which Tenant provides written waiver of Tenant's right to terminate the Lease as a result of Tenant's failure or inability to obtain Permits. (Section 3)."

14.     The Lease further establishes that the Rent Commencement Date shall be the earlier to occur of: three hundred sixty-five (365) days following the Commencement Date or the date on which Tenant opens for business.  However, the Lease contains a caveat to this calculation.  In particular, the Lease specifies "[p]rovided that _**Landlord delivers the Premises to Tenant in accordance with the terms of this Lease**_ no later than the Outside Delivery Date, the Rent Commencement Date shall occur no later than April 1, 2025 (the "Outside Rent Commencement Date"), _unless Landlord has not substantially completed all Landlord Work_

_**which is necessary for Tenant's receipt of a Certificate of Occupancy, or its equivalent.**_  _In the event Landlord has not delivered the Premises to Tenant in accordance with the terms of this Lease on or before the Outside Delivery Date,_ **_the Outside Rent Commencement Date shall be delayed one (1) day for each day of delay…._**_"_

15.    Section 2(b) of the Lease provides that Landlord tender exclusive possession of the Premises to Tenant on the Commencement Date; provided however, Landlord shall deliver to Tenant at least fourteen (14) days' prior written notice of the Commencement Date so that Landlord and Tenant can meet at the Premises to inspect the Premises **and confirm that all Landlord Work has been completed and the Delivery Condition satisfied.**

**B.    Lease Provision Defining the Scope of Landlord Work:**

16.    The Delivery Condition is defined by the contents of Exhibit B to the Lease, which requires Landlord to perform or ensure the following:

**DELIVERY CONDITION**

Landlord, at Landlord's sole cost and expenses, shall complete the following prior to, and as a condition of, the Commencement Date:

(1)    The Land constitutes a separate, legally distinct and platted lot and separate, standalone tax parcel.

(2)    All personal property and equipment of Landlord and any other party has been removed.

(3)    Landlord's representations and warranties set forth in the Lease shall be true and correct.

(4)    Substantial Completion of the Landlord Work shall have been obtained and in compliance in all material respects with all Governmental Requirements.

(5)    No prior tenants or other third parties are in possession or occupy the Premises.

17.    Landlord Work is defined by the contents of Exhibits B-1, B-2, and B-3 of the Lease, which provide, in pertinent part, that Landlord must deliver the Premises **"(i) with access to adjacent public right-of-way of North Highway 17 and all Critical Access substantially completed, (ii) with adequate utility lines to the Premises boundary, both in accordance with Exhibits B-2 and B-3 attached."**  Both the Critical Access and utilities required to be delivered, as well as their locations, are depicted in Exhibit C and Exhibit B-3 of the Lease.

18.     The Lease defines "Substantial Completion" as "completion of all elements of Landlord Work in accordance with and in compliance with the provisions of **Exhibit B-1** and **Exhibit B-2** attached hereto, the plans and specifications for the Landlord Work, and all applicable Governmental Requirements, so that all conditions to the occurrence of the Commencement Date, including the Delivery Condition, can be satisfied and Tenant can immediately commence the construction and performance of the Initial Tenant Work upon obtaining the Permits ***and obtain the final certificate of occupancy upon the completion of the Initial Tenant Work.***"

19.     Governmental Requirements are defined as "all constitutions, statutes, laws, ordinances, codes, regulations, resolutions, rules, requirements and directives of any Governmental Authority, and all decisions, judgments, writs, injunctions, orders, decrees or demands of Governmental Authorities construing any of the foregoing (but excluding those which do not impose any obligation upon Tenant, Landlord or the Premises)."

20.     Moreover, Exhibit B-2 contemplates that: "Landlord and Tenant acknowledge that portions of the Landlord Work and the Initial Tenant Work may be undertaken contemporaneously, and that Tenant shall be provided with access to the Premises to perform and complete the Initial Tenant Work prior to the Commencement Date. Thus, Landlord shall, and shall cause all Landlord Parties to, use best efforts to coordinate the Landlord Work so as to prevent any interference with, or delay of, the Initial Tenant Work."

**C.     Lease Provisions if Landlord is Late on Landlord Work**

21.     In addition to the contractually mandated extension of the Outside Rent Commencement Date for late delivery of Landlord Work, Landlord was obligated to deliver Landlord Work by **December 15, 2024** (the "Outside Delivery Date").   In the event that

Landlord could not achieve this deadline, the parties agreed that F&D would be entitled to abate Rent "for each day from and after the Outside Delivery Date that the Commencement Date fails to occur.  Thereafter, from and after **April 1, 2025,** Tenant shall receive two (2) days of abated Rent for each day that the Commencement Date fails to occur."

22.    The parties also agreed that if Landlord did not complete Landlord Work by January 29, 2025, F&D would be entitled to Delay Damages of $1,177.78 per day, and that "**THE ACTUAL DELAY DAMAGES TO BE SUFFERED BY TENANT IN THE EVENT OF ANY SUCH DELAYS BY LANDLORD WOULD BE EXTREMELY DIFFICULT IF NOT IMPOSSIBLE TO ASCERTAIN AND THAT THE AMOUNT OF SUCH DELAY DAMAGE IS A REASONABLE ESTIMATE OF THE ACTUAL DAMAGES TO BE SUFFERED BY TENANT AND THAT SUCH SUM REPRESENTS LIQUIDATED DAMAGES AND NOT A PENALTY.**

**D.    Landlord Did Not Complete Landlord Work Until at Least June 18, 2025**

23.    By letter dated December 6, 2024, Landlord through its counsel, notified F&D that it believed Landlord Work was complete in accordance with the Lease and called for inspection on December 9, 2024.  Exhibit 2 at 4.

24.    F&D's representatives attended the inspection on December 9, 2024, and F&D informed Landlord that it was not complete with its work via email dated December 11, 2024. Exhibit 2 at 2-4.

25.    To support the hollowness of Landlord's claim of substantial completion, Tenant provided a photo taken from the site of the area where the Critical Access road and utilities were to be installed, which was significantly under construction at that time. Sewer and water lines were not installed in accordance with the plans attached to the Lease and were not approved for

operation by the Town of Mt. Pleasant or the governing authority, Mount Pleasant Waterworks at that time.  Id.



26.    Landlord had also failed to complete a turn lane (referred to as a deceleration lane or "decel" lane into the property and had not yet obtained approvals from South Carolina Department of Transportation ("SCDOT").

27.    Landlord's representative responded on December 13, 2024 claiming, contrary to the clear language of the Lease requiring the physical installation of the road as a precondition to satisfying Landlord Work obligations, that Landlord was only required to obtain a cross-access easement to complete its work with regard to Critical Access. Exhibit 3 at 3-4.  There is no basis in the Lease for Landlord's position in this regard.

28.    Notably, Landlord made no mention of any delays in the performance of the work or Tenant Delays at this time.

29.    On December 17, 2024, F&D responded via email again refuting Landlord's claim of completion of Landlord Work on the Critical Access areas and noted that utilities were also not complete in accordance with the Lease.  In particular, F&D noted that the road was not even accessible by construction equipment at that time so that F&D could commence its construction.  Id.

30.    Because the Lease anticipated and allowed F&D to proceed with its work to mitigate any impacts to its construction schedule, F&D commenced installing a construction road at its own cost and expense so that it could access the site and start clearing it in preparation for its construction.

31.    The Town of Mt. Pleasant ultimately approved F&D's use of the construction access road even, despite the Critical Access road not being completed, on January 31, 2025, so that F&D could commence physical construction of the Premises and ultimately open its store for business.

32.    On March 25, 2025, Landlord's representative admitted via email: "The asphalt is complete from the decel lane to the end of the driveway. See attached pictures. The engineers confirmed that the initial water and sewer tests were completed on the 24th with acceptable results. Please remit rent per the lease by April 1, 2025." Exhibit 4.

33.    F&D agrees that the Critical Access road, only, was complete on March 25, 2025. Utilities and other portions of Landlord Work required for F&D to obtain its certificate of occupancy including the turn lane, otherwise referred to as the "decel" lane into the property, remained outstanding.

34.    On March 28, 2025, F&D responded via letter, refuting Landlord's claim that rent was due on April 1, 2025 because the Outside Rent Commencement Date had been, and would

continue to be, extended day for day due to Landlord's failure to complete Landlord's Work in accordance with the Lease.  Exhibit 5.  In particular, Tenant could not tie in and obtain its certificate of occupancy to water and sewer lines.  Access to the property was also not complete and approved by SCDOT.

35.      Between March 31 and April 1, 2025, Landlord's manager and, upon information and belief, sole owner of the interests in Landlord, Ross Holliday, and F&D's real estate representative, Kalyn Engwall, held a series of calls to discuss the matter.  Mr. Holliday indicated during a call that he had "f*ck you money" and he was "going to use it" if F&D did not give in to Landlord's baseless demand to pay rent on April 1, 2025.  F&D refused.

36.      On April 3, 2025, Landlord emailed F&D that the vacuum test had been performed and passed.  Exhibit 6.  This is another admission that Landlord's obligations were not complete on December 15, 2024, and that Landlord had more work left to complete.

37.      On April 17, 2025, Landlord sent a demand letter to F&D claiming that Tenant was late on rent as of April 1, 2025 and had failed to comply with the Lease by: (1) failing to submit plans for a smaller building concept, (2) failing to pursue and install a road connecting the Premises to the adjacent Home Depot parking lot, (3) causing delays in Landlord's construction.  Landlord demanded that F&D commence paying rent on May 1, 2025.  Exhibit 7.

38.      Landlord has never admitted that Rent was not due on April 1, 2025, though Landlord seemingly agreed, at least as of April 17, 2025, that the Outside Rent Commencement Date should be extended.

39.      On April 22, 2025, F&D responded to the April 17th letter refuting each claim of breach of Lease and specifically noted that Landlord was still not finished with its Landlord Work. At that time, Landlord had not obtained a permit to operate its water and sewer

connections, which required bacterial testing prior to Tenant's ability to tie into the utility lines as well as submission of as-built drawings of the system and an operating and maintenance agreement with Mt. Pleasant Waterworks to enable F&D to be able to obtain its certificate of occupancy for the Premises. Exhibit 8.

40.     F&D also indicated that while it once contemplated a smaller 50,000 sq. ft. store concept and discussed that concept with Landlord, it never followed through on redesigning the store to a smaller format.  Id.

41.     Finally, F&D noted that the Lease excused the performance of the Home Depot connection work because Landlord had not obtained approval for the connection prior to the Permitting Expiration Date, which occurred on November 22, 2024.  Id.

42.     On April 24, 2025, Tenant shared Mt. Pleasant Waterworks' closeout checklist and identified in the Town Council meeting minutes Landlord's obligations required for F&D to be able to obtain its certificate of occupancy.

43.     Pursuant to that certain Hold Harmless Agreement executed by F&D and Mt. Pleasant Waterworks on May 3, 2025, F&D could not obtain is permit to operate the water and sewer utilities it needed for its Premises until Landlord had obtained a water and sewer permit for the entire property including portions sold by Landlord to Spinx to operate a gas station. Spinx was the "Master Permit Holder" for the entire property.  Upon information and belief, Landlord has a copy of the Hold Harmless Agreement and even was required to execute an acknowledgement to its terms as required by Mt. Pleasant Waterworks.  Exhibit 9.

44.     On June 6, 2025, Landlord sent F&D a "Notice of Default" realleging the same baseless breaches of the Lease: (i) failure to share plans; (ii) failure to deliver the Home Depot

Connection; and (iii) failure to pay rent since April 1, 2025. Landlord threatened to take legal action against F&D in this letter. Exhibit 10.

45.    On June 20, 2025, Landlord's representative emailed F&D a copy of the permit to operate the water utility system by the SC Department of Environmental Services dated June 10, 2025. Exhibit 11. This is another admission that Landlord's Work was not completed on December 15, 2024.

46.    On June 27, 2025, Landlord's representative emailed F&D a copy of the approval to close out the permit for installing road and deceleration lane into the property by the South Carolina Department of Transportation dated June 18, 2025. In the email, Landlord demanded rent in the amount of $153,938.89, despite admitting that the Landlord Work obligations had just been completed. Exhibit 12. This is another admission that Landlord's Work was not completed on December 15, 2024.

47.    Upon receipt of these sign-off letters, F&D, as of the date of this filing, believes Landlord has substantially completed its Landlord Work as of June 18, 2025.

48.    By Landlord's own admissions, written correspondence, and approvals from the Governing Authorities, Landlord has no basis to claim that it completed its work sufficiently to trigger the Outside Rent Commencement Date or avoid Rent abatement and liquidated damages before June 18, 2025.

49.     By simple operation of the Lease, below are the calculations of the Landlord's failure to complete its work by December 15, 2024:

| Rent Commencement Definition (Lease Reference Pages) | | |
|---|---|---|
| **Landlord Work Due Date** | **Actual Date of Completion** | **Delay** |
| December 15, 2024 | June 18, 2025 | 185 days |
| *Day for Day Extension* | | |
| **Original Outside Rent Commencement Date** | **Adjusted Outside Rent Commencement Date** | **Extension** |
| April 1, 2025 | October 3, 2025 (unless Tenant opens sooner) | 185 days (unless Tenant opens sooner) |
| | | |
| **Rent Abatement and Liquidated Damages Assessment (Section 11(c))** | | |
| **Landlord Work Due Date** | **Actual Date of Completion** | **Delay** |
| December 15, 2025 | June 18, 2025 | 185 days |
| | | |
| *Day for Day Rent Abatement from December 15, 2025 to April 1, 2025* | | |
| **107** days of abated Rent after the Rent Commencement Date | | |
| | | |
| *Two Days for Each Day of Delay from April 1, 2025 to June 18, 2025* | | |
| An additional **156** days **totaling 263** days of abated Rent | | |
| | | |
| *Liquidated (Delay) Damages at $1,177.78/day after January 29, 2025 to June 18, 2025* | | |
| 140 days at $1,177.78 per day = **$164,889.20** | | |

**E.     Landlord Alleges Various Unsubstantiated Breaches of the Lease and Threatens to Evict Tenant**

50.     On July 3, 2025, Landlord sent F&D a second Notice of Default, Demand for Preservation & Notice of Second Inspection. Exhibit 13.

51.     In the July 3rd Notice, Landlord realleges the same baseless allegations that F&D breached the Lease for (i) failure to share plans; (ii) failure to deliver the Home Depot Connection; and (iii) failure to pay rent since April 1, 2025, because Tenant purportedly caused delays in the performance of Landlord Work.

52.     Landlord further alleged for the first time that F&D had failed to provide proof of insurance under Section 17(d) of the Lease, and that F&D had waived its rights by failing to

attend the December 9, 2024, meeting to conduct a Substantial Completion inspection and failing to object or provide a punch list after that meeting. Landlord further claimed that Substantial Completion occurred on December 15, 2024; however, Landlord, in a blatant admission that this position was knowingly false, requested a "second" inspection of Landlord Work on July 16, 2025.

53.     Landlord again threatened eviction and F&D's "financial interest" in the Premises if F&D did not concede to Landlord's inaccurate and baseless claims for the payment of Rent.

54.     F&D's representatives attended this second inspection and have since confirmed that Tenant believes Landlord Work is satisfactorily complete as of June 18, 2025, while reserving all rights.

### F.     F&D Has Not Breached the Lease

55.     By the clear and unambiguous application of the Lease's Rent Commencement Date definition and Section 11(a), (i) the Outside Rent Commencement Date has been extended from April 1, 2025 to October 3, 2025 and (ii) upon Rent Commencement (either October 3, 2025, or the date Tenant opens for business if earlier than October 3rd), Tenant is entitled to abate Rent for 263 days. Thus, it is impossible that F&D has breached the Lease by failing to pay rent from April 1, 2025 through the date of this pleading.

56.     F&D has also not breached the Lease by failing to design and construct the Home Depot Connection, failing to provide certificates of insurance, or failing to seek Landlord approval for its plans.

57.     In this regard, Landlord's threats to evict F&D are clearly designed to exert pressure on F&D to concede in bad faith. In particular, Section 28(g) of the Lease provides that "Landlord shall not exercise or pursue the right to terminate this Lease or to terminate Tenant's

right to possess the Premises in connection with a Tenant Default that results from Tenant's failure to perform or observe an obligation under this Lease so long as Landlord has the ability to address and resolve such Tenant Default at Tenant's cost and expense pursuant to other remedies and relief available to Landlord…. In no event shall the foregoing apply to a Monetary Tenant Default of Tenant to perform Tenant's obligation to pay Rent…."

58.     Even if F&D were required to perform this work, Landlord has various other remedies to accomplish it and cannot seek evict Tenant on this basis, or any other alleged breach for which Landlord has alternative remedies.

**G.     Lease Provisions Applicable to the "Home Depot Connection"**

59.     Section 35(d) of the Lease provides that, pursuant to an existing Declaration of Access Easement granted by Home Depot U.S.A., Inc. ("Home Depot"), F&D would be responsible for installing a "Connection" (the "Home Depot Connection") located at the rear of the Premises in between the Premises and Home Depot's adjacent parking lot.

60.     However, Landlord was required to obtain approval for the connection from Home Depot on or before the Permitting Expiration Date.  In the event that Landlord failed to secure the Connection Approval by that date, which pursuant to the Third Amendment to Ground Lease Agreement, was November 22, 2024, F&D would no longer have *any* obligation to design or construct the Home Depot Connection.

61.     Landlord did not obtain the approval for the Home Depot Connection on November 22, 2024, and to date, it has not obtained the approval.

62.     Therefore, F&D did not, and could not have, breached the Lease by failing to design and install the Home Depot Connection, and all of F&D's obligations with regard to the connection have been extinguished.

**H.     Lease Provisions Applicable to Alleged Tenant Delay and Force Majeure**

63.     Section 36(k) of the Lease describes the requirements for asserting a delay in completing Landlord Work, among other things.  First, Landlord was obligated to provide Notice within fifteen (15) days of the occurrence of the alleged event impacting Landlord's delivery obligations and schedule, identify the obligation to be performed that has been affected and/or delayed, and explain the proposed actions to mitigate or overcome such impacts.

64.     If Landlord fails to give Notice in accordance with Section 36(k) within fifteen (15) days, the parties expressly agreed that the event and impacts of said event shall be deemed waived.

65.     Landlord has asserted that Tenant delayed the installation of the Critical Access road and utilities because (i) one of Tenant's delivery trucks drove over a curb and (ii) Tenant requested changes to the location of the delivery of the utilities.

66.     Despite requests from F&D to Landlord for proof that the damage was caused by F&D or its agents, and the resulting impact to its schedule, Landlord has failed to furnish any.

67.     Moreover, it is simply not possible or credible that damage to a curb in January, F&D presumes even though Landlord has not identified when it actually happened, could have slowed down Landlord's Work amounting to any delay, much less a delay of 185 days.

68.     Landlord also relies on F&D request that Landlord hold off on changes that F&D made to certain delivery locations for utilities' conduit installation that Landlord alleges caused a delay.

69.     However, as Landlord is well aware, Landlord informed F&D via email dated October 18, 2024 that the work was already completed and thus could not accommodate the request to hold off on implementing it.  Exhibit 14.

70.     It is not possible or credible that F&D slowed down the progress of Landlord Work with this request or that the first request for a modification had any impact on the performance and completion of Landlord Work when Landlord did not finish the water and sewer portions of Landlord Work until over eight (8) months later and the changes had been implemented in October 18, 2024 before Tenant commenced its construction.

71.     Landlord also failed to place F&D on Notice of any of the alleged events giving rise to an extension in accordance with the Lease (within fifteen (15) days thereof, or otherwise for that matter) and thus has waived any claim as a potential basis for delay or excuse for its compliance with the Outside Delivery Date of December 15, 2024.

### I.     Lease Provisions Applicable to Certificates of Insurance

72.      Section 17 of the Lease provides that F&D "shall procure and shall maintain… at all times during the Term," insurance as set forth therein.

73.     Section 17(d) provides that immediately upon the issuance of each policy required, the holder of the policy shall deliver a certificate evidencing such insurance to the other party.

74.     The Term is defined as the "Initial Term" and Extension Terms.

75.     The Initial Term is defined as the twenty (20) Lease Years "commencing on the Rent Commencement Date…"

76.     Because the Term has not commenced, no certificates of insurance are required to be provided by F&D.

77.     Notably, however, F&D negotiated several requirements for Landlord's provision insurance certificates during Landlord Work which Landlord has breached.

78. Despite no obligation to provide the certificates of insurance in the Lease, F&D has provided Landlord with its general contractor's certificates of insurance listing Landlord related parties as additional insureds. Thus, F&D has caused the adequate coverage of the Premises and protection for Landlord and its related parties even though no such obligation exists. Landlord has not and could not have suffered any harm as a result.

**J.     Lease Provisions Applicable to Landlord's Approval/Receipt of F&D's Plans**

79. In Section 2(c) of the Lease, Landlord approved F&D's plans, which were attached to the Lease as Exhibit J thereto.

80. This Section explicitly provided that "Tenant shall have the right to revise the Approved TI Plans to address modifications required by Governmental Authorities, immaterial modifications in the design of the Initial Tenant Work, and modifications required for Tenant's occupancy of or operations in the Premises, and the Initial Tenant Work shall be performed in accordance with such revised Approved TI Plans.

81. Nowhere in the Lease does Landlord maintain an approval right over Initial Tenant Work following its approval of the Approved TI Plans.

82. And while not prohibited from making such changes, any changes made to the Approved TI Plans were done so under the conditions set forth immediately above.

83. Landlord seemingly relies on the preceding portions of Section 2(c) regarding TI Plans, which apply after Initial Tenant Work, to gin up a claim that Tenant had an obligation to share its plans for Landlord approval.

84. F&D has not breached the Lease by failing to seek Landlord approval or failing to share its plans, as modified in accordance with the Lease, with Landlord.

## FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

85.    F&D incorporates by reference all preceding paragraphs as if fully restated verbatim herein.

86.    An actual controversy exists between F&D and Landlord concerning their respective rights, duties, and obligations under the Lease, particularly regarding:

    a)  when the Commencement Date occurred;

    b)  when the Rent Commencement Date will occur;

    c)  whether F&D is obligated to pay rent as of April 1, 2025;

    d)  F&D's entitlement to rent abatement;

    e)  F&D's entitlement to liquidated damages;

    f)  whether F&D has breached the Lease by failing to design and construct the Home Depot Connection;

    g)  whether F&D has breached the Lease by failing to provide certificates of insurance; and

    h)  whether F&D has breached the Lease by failing to seek Landlord approval for its plans.

87.    Under the Lease, the Commencement Date is defined as "one (1) Business day following the later of (i) the date on which Landlord has delivered possession of the Premises to Tenant with the Landlord Work completed and the other conditions set forth on Exhibit B attached to this Lease (the "Delivery Condition") satisfied; or (ii) the earlier to occur of (A) Permitting Expiration Date, or (B) the date on which Tenant provides written waiver of Tenant's right to terminate the Lease as a result of Tenant's failure or inability to obtain Permits."

88.     The Landlord Work was not substantially completed until June 18, 2025, as evidenced by Landlord's own correspondence and the approvals from the South Carolina Department of Environmental Services and the South Carolina Department of Transportation.

89.     Pursuant to the Lease, the Rent Commencement Date is the earlier of (i) 365 days after the Commencement Date, or (ii) the date on which Tenant opens for business.

90.     Given that the Commencement Date occurred on June 19, 2025 (one business day after Substantial Completion of Landlord Work), the Rent Commencement Date would be the earliest to occur of: June 19, 2026, the date F&D opens for business, or the Outside Rent Commencement Date, April 1, 2025, subject to extension for Landlord Work delays.

91.     The Lease further provides that if Landlord fails to deliver the Premises with all Landlord Work obligations sufficiently completed on or before the Outside Delivery Date of December 15, 2024, the Outside Rent Commencement Date of April 1, 2025 "shall be delayed one (1) day for each day of delay."

92.     As Landlord was 185 days late in completing the Landlord Work, the Outside Rent Commencement Date has been extended by 185 days from April 1, 2025, to October 3, 2025.

93.     F&D is entitled to abate Rent for 107 days (representing the period from December 15, 2024, to April 1, 2025) plus an additional 156 days (representing two days for each day of delay from April 1, 2025, to June 18, 2025), for a total of 263 days of abated Rent after the Rent Commencement Date.

94.     F&D is also entitled to liquidated damages in the amount of $1,177.78 per day for each day from January 29, 2025, to June 18, 2025, totaling $164,889.20, as expressly provided in the Lease.

95.     F&D has not breached the Lease by failing to design and construct the Home Depot Connection because Landlord failed to obtain the required Connection Approval from Home Depot by the Permitting Expiration Date of November 22, 2024, which extinguished F&D's obligation to perform this work under Section 35(d) of the Lease.

96.     F&D has not breached the Lease by failing to provide certificates of insurance because the Term of the Lease has not yet commenced, and Section 17 of the Lease only requires F&D to maintain insurance "at all times during the Term."

97.     F&D has not breached the Lease by failing to seek Landlord approval for its plans because Section 2(c) of the Lease explicitly grants F&D "the right to revise the Approved TI Plans" without further approval from Landlord.

98.     Landlord has repeatedly threatened to terminate the Lease and evict F&D based on these unfounded allegations of breach, causing uncertainty and insecurity regarding F&D's rights under the Lease.

99.     Pursuant to 28 U.S.C. § 2201, F&D is entitled to a declaratory judgment that:

a)  The Commencement Date occurred on June 19, 2025;

b)  The Rent Commencement Date will be the earlier of June 19, 2026, or the date F&D opens for business;

c)  The Outside Rent Commencement Date has been extended to October 3, 2025;

d)  F&D is entitled to 263 days of abated Rent after the Rent Commencement Date;

e)  F&D is entitled to liquidated damages in the amount of $164,889.20;

f)  F&D has not breached the Lease by failing to design and construct the Home Depot Connection;

g)  F&D has not breached the Lease by failing to provide certificates of insurance; and

h) F&D has not breached the Lease by failing to seek Landlord approval for its plans.

100.    A declaratory judgment is necessary and appropriate at this time to settle the controversy between the parties and to prevent Landlord from taking further actions based on its misinterpretation of the Lease that would cause irreparable harm to F&D's substantial investment in the Mount Pleasant store.

**FOR A SECOND CAUSE OF ACTION**
**(Breach of Contract)**

101.    F&D incorporates by reference all preceding paragraphs as if fully restated verbatim herein.

102.    The Lease constitutes a valid and binding contract between F&D and Landlord.

103.    Pursuant to Section 11(c) of the Lease, if Landlord failed to achieve Substantial Completion of the Landlord Work by January 29, 2025, Landlord was obligated to pay F&D Delay Damages in the amount of $1,177.78 per day from January 29, 2025, until the date Landlord achieved Substantial Completion of the Landlord Work.

104.    As set forth above, Landlord did not achieve Substantial Completion of the Landlord Work until June 18, 2025, which is 140 days after January 29, 2025.

105.    Accordingly, Landlord is obligated to pay F&D Delay Damages in the amount of $164,889.20, representing 140 days at the contractually agreed rate of $1,177.78 per day.

106.    The Lease expressly states:

**THE ACTUAL DELAY DAMAGES TO BE SUFFERED BY TENANT IN THE EVENT OF ANY SUCH DELAYS BY LANDLORD WOULD BE EXTREMELY DIFFICULT IF NOT IMPOSSIBLE TO ASCERTAIN AND THAT THE AMOUNT OF SUCH DELAY DAMAGE IS A REASONABLE ESTIMATE OF THE ACTUAL DAMAGES TO BE SUFFERED BY TENANT AND THAT SUCH SUM REPRESENTS LIQUIDATED DAMAGES AND NOT A PENALTY.**

107.    F&D has demanded payment of these Delay Damages from Landlord in writing on multiple occasions, including but not limited to:

    a)  In its letter dated March 28, 2025, responding to Landlord's demand for rent;

    b)  In its letter dated April 22, 2025, responding to Landlord's April 17 demand letter; and

    c)  In additional correspondence with Landlord and/or its representatives.

108.    Each of these demands was made more than fifteen (15) days ago, and F&D hereby reiterates its demand for payment once again.

109.    Despite these repeated demands and the clear language of the Lease, Landlord has failed and refused to pay the Delay Damages owed to F&D.

110.    Landlord's failure to pay the contractually required Delay Damages constitutes a material breach of the Lease.

111.    As a direct and proximate result of Landlord's breach, F&D has suffered damages in the amount of $164,889.20, plus interest.

112.    F&D is therefore entitled to judgment against Landlord for breach of contract in the amount of $164,889.20, plus pre-judgment and post-judgment interest at the statutory rate, and its costs and attorneys' fees incurred in bringing this action.

WHEREFORE, the Plaintiff, Floor and Decor Outlets of America, Inc., demands and prays:

    1.  For a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that:

        a.  The Commencement Date occurred on June 19, 2025;

        b.  The Rent Commencement Date will be the earlier of June 19, 2026, or the date F&D opens for business;

    c.  The Outside Rent Commencement Date has been extended to October 3, 2025;

    d.  F&D is entitled to 263 days of abated Rent after the Rent Commencement Date;

    e.  F&D is entitled to liquidated damages in the amount of $164,889.20;

    f.  F&D has not breached the Lease by failing to design and construct the Home Depot Connection;

    g.  F&D has not breached the Lease by failing to provide certificates of insurance; and

    h.  F&D has not breached the Lease by failing to seek Landlord approval for its plans;

2.  For judgment against Landlord for breach of contract in the amount of $164,889.20, representing the Delay Damages owed under the Lease;

3.  For compensatory damages in an amount to be determined at trial;

4.  For punitive damages in an amount to be determined at trial;

5.  For pre-judgment and post-judgment interest at the maximum rate allowed by law;

6.  For costs and reasonable attorneys' fees incurred in bringing this action; and

7.  For such other and further relief as this Court deems just and proper.

          Respectfully submitted,

          *s/ James W. Clement*

          **G. Trenholm Walker (Fed ID# 4487)**
          Direct:  (843) 727-2208
          Email:  Walker@WGLFIRM.com
          **James W. Clement (Fed ID# 12720)**
          Direct:  (843) 727-2224
          Email:  Clement@WGLFIRM.com

          **WALKER GRESSETTE & LINTON, LLC**
          Mail:   P.O. Drawer 22167, Charleston, SC 29413
          Office: 66 Hasell Street, Charleston, SC 29401
          Phone:  (843) 727-2200

*ATTORNEYS FOR PLAINTIFF FLOOR AND DECOR OUTLETS OF AMERICA, INC.*

Charleston, South Carolina
August 1, 2025